UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| WALTER ENERGY, INC., *et al.*, Debtors.[1] | § § § § | Case No. 15–02741–TOM11 |
| | § | Jointly Administered |
| DOMINION RESOURCES BLACK WARRIOR TRUST, by and through its TRUSTEE, SOUTHWEST BANK, Plaintiff, | § § § § § | Adversary No.: _____ |
| VS. | § § § | |
| WALTER BLACK WARRIOR BASIN LLC, Defendant. | § § | |

## ORIGINAL COMPLAINT AND APPLICATION FOR
## PRELIMINARY AND PERMANENT INJUNCTION

Dominion Resources Black Warrior Trust ("Dominion") by and through its Trustee, Southwest Bank, hereby files this Original Complaint and Application for Preliminary and Permanent Injunction and would show the Court as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Walter Energy, Inc. (9953); Atlantic Development and Capital, LLC (8121); Atlantic Leaseco, LLC (5308); Blue Creek Coal Sales, Inc. (6986); Blue Creek Energy, Inc. (0986); J.W. Walter, Inc. (0648); Jefferson Warrior Railroad Company, Inc. (3200); Jim Walter Homes, LLC (4589); Jim Walter Resources, Inc. (1186); Maple Coal Co., LLC (6791); Sloss-Sheffield Steel & Iron Company (4884); SP Machine, Inc. (9945); Taft Coal Sales & Associates, Inc. (8731); Tuscaloosa Resources, Inc. (4869); V Manufacturing Company (9790); Walter Black Warrior Basin LLC (5973); Walter Coke, Inc. (9791); Walter Energy Holdings, LLC (1596); Walter Exploration & Production LLC (5786); Walter Home Improvement, Inc. (1633); Walter Land Company (7709); Walter Minerals, Inc. (9714); and Walter Natural Gas, LLC (1198). The location of the Debtors' corporate headquarters is 3000 Riverchase Galleria, Suite 1700, Birmingham, Alabama 35244-2359.

518140 000026 15288903.4        1

## I. Nature of the Adversary Proceeding

1. Dominion owns an overriding royalty interest ("ORRI") in gas wells operated by Walter Black Warrior Basin LLC ("Walter Black"), one of the debtors in the above-captioned Bankruptcy Case (collectively, the "Debtors" and each a "Debtor"). Under Alabama law, an ORRI is a real property interest. As the operator, Walter Black sells the gas produced – on behalf of the interest owners – to Alabama Gas Corporation ("AGC"). The proceeds from the sale of Dominion's share of the gas ("Production Proceeds") are not property of the estate. The governing ORRI Conveyance (as defined and further described below) between Dominion and Debtor, obligates the Debtor to distribute, pursuant to an agreed schedule, Dominion's proportionate share of Production Proceeds.[2] The next distribution of the Production Proceeds is due August 14, 2015, and totals $983,828. This payment represents Dominion's share of gas produced during the months of April, May, and June 2015. Despite the fact that the Production Proceeds are not and have never been the Debtor's property, pre-petition or post-petition, the Debtor has indicated that it will not distribute the Production Proceeds to Dominion. Further, the Debtor refuses to segregate the Production Proceeds such that those monies will not be subject to liens of other creditors or used to pay other obligations of the Debtors.

2. The Debtor's refusal to segregate the Production Proceeds and subjecting them to liens of third parties places those funds, which are not property of the estate, in jeopardy of never being paid to Dominion. If that occurs, the consequences to the beneficiaries of Dominion will be dire. Dominion's beneficial interests—which trade on the New York Stock Exchange (the

---

[2] Separately, Alabama law requires that "proceeds derived from the sale of oil or gas production from any oil or gas well shall be paid to persons legally entitled thereto" by the operator no later than 60 days after the end of the calendar month in which the proceeds of production are received. *See* Ala. Code § 9-17-33 (2015).

"NYSE")—could be delisted from the NYSE.[3] Even more severe, if Dominion does not receive two consecutive distributions, Dominion (as a trust) will likely terminate forcing the Trustee to sell the ORRI. Either instance would cause severe and unnecessary harm to the hundreds of Dominion's beneficiaries. Thus, a preliminary injunction and permanent injunction is necessary to protect Dominion's assets.

3. The Trustee files this Complaint and Application for Preliminary Injunction seeking the following: (i) a declaratory judgment that the ORRI is a real property interest; (ii) a declaratory judgment that the ORRI and the Production Proceeds are not property of the estate; and (iii) a preliminary injunction which (a) obligates Debtor to segregates the Production Proceeds attributable to the ORRI; (b) prevents the Debtor from encumbering the Production Proceeds; and (c) obligates the Debtor to continue to distribute the Production Proceeds to Dominion in accordance with the Conveyance and Alabama law.

## I. PARTIES

4. Plaintiff is Dominion Resources Black Warrior Trust ("Dominion), acting by and through its Trustee, Southwest Bank. Dominion is a Delaware business trust.

5. Defendant, Walter Black Warrior Basin LLC (as previously defined "Walter Black"), is a Debtor in the above-captioned Bankruptcy Case.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157.

7. Venue is proper pursuant to 28 U.S.C. §1408 and §1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

---

[3] As mentioned below, the Dominion's beneficial interests are traded on the NYSE under the symbol "DOM". Pursuant to the rules of the NYSE, Dominion's beneficial interest could be delisted to the extent that the price of DOM falls below $1.00 and stays below $1.00 over a consecutive 30 trading-day period.

### III. FACTUAL BACKGROUND

8. Dominion is a Delaware business trust formed and governed pursuant to the terms of that certain *Trust Agreement of Dominion Resources Black Warrior Trust* entered into effective as of May 31, 1994 (the "Trust Agreement"). Southwest Bank currently serves as Dominion's Trustee. Dominion's beneficial interests trade on the New York Stock Exchange under the symbol "DOM".

9. Dominion owns certain overriding royalty interests (as previously defined, the "ORRI") as a result of a conveyance by the Debtor's predecessor of an undivided sixty-five (65%) interest in and to any gas produced from certain properties located in Tuscaloosa County, Alabama (collectively, the "Black Warrior Properties" or the "Properties"), more specifically identified in that certain Overriding Royalty Conveyance, dated as of June 1, 1994, (as amended, the "Conveyance").[4]

10. The Black Warrior Properties are operated by Walter Black.[5] There are currently over 500 active wells on the Properties.

11. Dominion's ORRI is a non-expense bearing share of the gross gas produced from the Properties.[6] The ORRI is a non-operating interest that does not include the power or right to control or participate in any operations conducted on the Properties.[7] It entitles Dominion to a proportionate share of gas production proceeds (cash proceeds from the sale of gas), which are

---

[4] *See* Conveyance at 1-2 (grant of overriding royalty interests in Subject Gas), at 6 (definition of "Subject Gas"), and at 3 (definition of "Company Interests"). A copy of the Conveyance is attached hereto as Exhibit A. The Conveyance was properly recorded in Tuscaloosa County, Alabama at Conveyance Book 1181, Page 644.

[5] *See* Declaration of William G. Harvey in Support of First Day Motions [Dkt. No. 3] (hereinafter, the "Harvey Declaration") at 14-15. Notably, the Declaration incorrectly states that Dominion is a party to a joint operating agreement with Walter Black.

[6] Conveyance at 1, 13-14 Article V.

[7] Conveyance at 15-16 § 6.06 ("Non-Operating Interest").

paid pursuant to a specific schedule outlined in the Conveyance.[8] The next distribution under the Conveyance is due to be made by Walter Black on August 14, 2015. It is estimated that the distribution will be approximately $983,828, which payment represents Dominion's share of gas produced during the months of April, May, and June 2015.

12. On July 15, 2015 (the "Petition Date"), the Debtors filed petitions under Chapter 11 of the Bankruptcy Code. Notably, the Debtors' filed their Chapter 11 petitions pursuant to a restructuring support agreement ("RSA") with a "Steering Committee" composed of certain of the Debtors' prepetition lenders. More specifically, the prepetition-lender Steering Committee is comprised of certain private equity funds that own a significant position in the Debtors' prepetition debt.[9] Pursuant to the RSA, the Debtors have agreed to seek this Court's entry of a proposed cash collateral order as agreed to by the prepetition-lender Steering Committee.

13. On the Petition Date – in a series of "first day motions" – the Debtors filed their *Motion for an Order (A) (I) Approving Continued Use of the Debtors' Existing Cash Management System, (II) Authorizing Use of Existing Cash Management System, (II) Authorizing Use of Existing Bank Accounts and Checks, (III) Waiving the Requirements of 11 U.S.C. § 345(b), (IV) Granting Administrative Expense Status to Certain Postpetition Intercompany Claims, and (V) Authorizing the Continuation of Certain Intercompany Transactions; and (B) Granting Related Relief* [Dkt. No. 38] (the Debtors' "Cash Management Motion"). As contemplated therein, the Cash Management Motion sought approval of the Debtors' continued use of a "zero balance" cash management system whereby the Debtors would

---

[8] Conveyance at 8-9 §3.01 ("Payment") and at 3 (definition of "Computation Period").

[9] *See* Verified Statement of the Steering Committee of First Lien Creditors Pursuant to Bankruptcy Rule 2019 [Dkt. No.260] (hereinafter, the "2019 Statement"). According to the 2019 Statement, the Steering Committee is composed of the following entities: (i) Apollo Global Management LLC; (ii) Ares Management LLC; (iii) Caspian Capital LP; (iv) Fidelity Investments; (v) Franklin Mutual Advisers LLC; (iv) GSO Capital Partners LP; and (v) KKR Credit Advisors (US) LLC.

issue invoices from their mining, coking and gas operations and the receipts received therefrom would be swept—either automatically or pursuant to a manual process—on a daily basis to a Master Concentration Account or to a Master Regions Disbursement Account (collectively, the "Master Accounts").[10] Disbursements would then be paid from these Master Accounts.[11] Attached to the Cash Management Motion as Exhibit B is a complicated "schematic" illustrating the various steps to the Debtors' "zero balance" cash management system. The Cash Management Motion does not segregate or provide separate treatment for production proceeds that are attributable to Dominion's ORRI. And, under the Debtors' "zero balance" cash management system, Dominion's proportionate share of production proceeds would be "swept" along with the Debtor's cash.

14. The Debtor did not seek interim relief on the Cash Management Motion, which was granted on the same day that it was filed—the Petition Date.[12]

15. Also, on the Petition Date, the Debtors filed their *Motion For Entry Of Interim and Final Orders Under 11 U.S.C. §§ 105, 361, 362, 363, 507 and 552, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014 (A) (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, and (III) Scheduling a Final Hearing; and (B) Granting Related Relief* [Dkt. No. 42] (the "Cash Collateral Motion") wherein the Debtors seek entry of an order containing a stipulation by the Debtors that "any and all of the Debtors' cash, cash equivalents, negotiable instruments, investment property, securities, and any amounts generated from the use, sale, lease or other disposition of the Prepetition Collateral, in

---

[10] Cash Management Motion at 6. As used herein, "Master Concentration Account" and "Master Regions Disbursement Account" shall have the meanings ascribed to such terms in the Cash Management Motion.

[11] Cash Management Motion at 6-7.

[12] *See* Cash Management Order, entered July 15, 2015.

each case wherever located, constitute Cash Collateral and Prepetition Collateral" of the prepetition lenders.[13] The Cash Collateral Motion also seeks to grant the prepetition lenders an adequate protection package, including liens encumbering the Debtors' "cash".[14]

16. On or about July 20, 2015, the Debtors sent a letter to Dominion stating that the obligation to distribute Dominion's proportionate share of production is a "pre-petition obligation" and they are not permitted to distribute the proceeds that are due to be distributed on August 14, 2015.[15]

17. The Cash Management Order authorizes Walter Black to commingle Dominion's proportionate share of production with other cash of the Debtors, which is materially prejudicial to Dominion. If, for example, Dominion is not paid its share of production and there are insufficient funds to pay post-petition claims during the administration of the bankruptcy case, including claims for diminution asserted by the senior lenders, Dominion may be unable to trace its production proceeds and will be foreclosed from trying to identify or seek possession of its property.

18. On July 29, 2015, Dominion filed it's Emergency Motion to Reconsider, on a Limited Basis, the Cash Management Order [Dkt. No. 239] (the "Motion to Reconsider") seeking to amend the Court's Cash Management Order in order to require the Debtors to, inter alia, segregate production proceeds attributable to Dominion's ORRI in order to avoid the commingling of such production proceeds with the Debtors' cash.

19. The Bankruptcy Court held an expedited hearing on Dominion's Motion to Reconsider on August 3, 2015. At the conclusion of such hearing, the Court reset the Motion to

---

[13] *See* Cash Collateral Motion at Exhibit A, pg. 10 ¶ 5(f).

[14] *See* Cash Collateral Motion at Exhibit A, pgs. 15-23.

[15] *See* Exhibit B at ¶ 2 ("… we are not permitted to pay obligations that arose prior to July 15, 2015, 'pre-petition obligations', *including royalty payments* under our gas and mineral leases." (emphasis added)).

Reconsider to be heard on August 18, 2015 – the same date as the Debtors' Cash Collateral Motion.[16] As of the filing of this Complaint, the Motion to Reconsider is set for hearing on August 18, 2015, at 10:00 a.m.

IV. **Causes of Action**

    A. **Court I -- Declaratory Relief -- the ORRI and Production Proceeds attributable thereto are not property of the Estate.**

20. Pursuant to 28 U.S.C. §§ 2201 & 2202, Dominion seeks a declaratory judgment that the ORRI and any Production Proceeds attributable thereto are not property of the Debtors' bankruptcy estate. The filing of bankruptcy does not create or define rights in property.[17] Instead, such rights and interests are to be determined by state law or by applicable non-bankruptcy law.[18] Generally, a royalty interest is a right to a share of gross production from the land, or the proceeds from the sale of such production, free of the costs of drilling, equipping and operating the well.[19] The term *"overriding* royalty" is used to describe a royalty carved out of the working interest created by an oil and gas lease.[20]

21. Under Alabama law, an oil and gas lease is a conveyance of an interest in real property,[21] and interests in gas and other minerals constitute severable interests in real property.[22]

---

[16] *See* Order on Emergency Motion By Dominion Resources Black Warrior Trust to Reconsider, on a Limited Basis, the Cash Management Order [Dkt. No. 333], entered August 4, 2015.

[17] *Universal Cooperatives, Inc. v. FCX, Inc. (In re FCX, Inc.)*, 853 F.2d 1149, 1153 (4th Cir. 1988).

[18] *See Butner v. United States*, 440 U.S. 48, 54-55 (1979); *Patterson v. Shumate*, 504 U.S. 753, 758 (1992).

[19] 2 PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 321 at 1 (2014); *Pilcher v. Turner*, 530 So. 2d 198, 201 (Ala. 1988) (explaining that royalty is a mineral owner's share of production, free of the expenses of production).

[20] 2 PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 418 at 351 (2014). "It [an overriding royalty] is, as is the lessor's royalty, an interest in land and hence is governed by statutes and common law rules relating to such interests, e.g., venue of an action, or the application of cannons of construction. Its classification as realty or personalty in any particular jurisdiction corresponds to that jurisdiction's classification of an ordinary royalty." 2 PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 418.1 at 354 (2014).

[21] *See Borden v. Case*, 118 So. 2d 751, 753 (Ala. 1960).

Indeed, the Alabama Supreme Court has indicated that an oil and gas lease is a fee simple determinable interest in property.[23] Alabama courts and many other oil and gas producing states have long held that interests in minerals to be produced are real property interests.[24] And, owners of real property are entitled to the fruits and profits attributable thereto.[25]

22. Importantly, a conversion action by an interest owner against an operator will lie if there was an obligation to pay identifiable production proceeds to the interest owner and the proceeds are wrongfully retained and used by the operator for other purposes.[26] Recognizing

---

[22] *In re Hillsborough Holdings Corp.*, 207 B.R. 299, 302 (Bankr. M.D. Fla. 1997) (citing *NCNB Tex. Nat'l Bank, N.A. v. West*, 631 So. 2d 212 (Ala. 1993)); *Dauphin Island Property Owners Assoc. v. Callon Institutional Royalty Investors I*, 519 So.2d 948, 951 (Ala. 1988) (holding that royalty is a vested interest in the minerals).

[23] *See Earle v. Int'l Paper Co.*, 429 So. 2d 989, 993-94 (Ala. 1983) (construing deed that reserved an interest in oil, gas and minerals for fifteen years and thereafter so long as such minerals were producing in paying quantities as reserving a fee simple determinable estate in property with a corresponding possibility of reverter as vesting in grantee; such interest "corresponds precisely to the term of the standard oil and gas lease, which lasts for a fixed number of years (the primary term) and so long thereafter as production continues."); *see also Earle*, 429 So. 2d at 994-95 (citing *Bagby v. Bredthauer*, 627 S.W.2d 190 (Tex. Civ. App. 1981)) (noting Alabama approach to such interests is consistent with the approach taken by Texas courts).

[24] *Nelson v. Teal*, 301 So. 2d 51, 52 (Ala. 1974) ("Mineral interests in land are considered to be 'real estate.'"); *Locke v. Locke*, 280 So. 2d 773, 775 (Ala. 1973) (citing *Brooks v. Cook*, 38 So. 641 (Ala. 1904)) (" ... it is to be noted that mineral rights are considered 'real estate' in Alabama ..."); *Lake v. Sealy*, 165 So. 399, 401 (Ala. 1936) (holding that interests in royalties and other mineral interests described and oil and gas leases were "classified in the nomenclature of the law of real property as incorporeal hereditaments"); *Thomason v. Mullinax*, 403 So.2d 883, 884 (Ala. 1981) (quoting *Sanford v. Alabama Power Co.*, 54 So.2d 562, 569 (Ala. 1951) (a mineral estate "after severance, is a corporeal hereditament ..."; applying such definition to a coal mineral lease); *McCall v. Nettles*, 37 So.2d 635, 637 (Ala. 1948) (holding that reservation of fifty percent (50%) of all rentals and royalties derived from coal, oil, gas or other mineral leases "reserve[d] an interest in the minerals themselves as they are imbedded in the ground ..."); *see also Borden v. Case*, 118 So. 2d 751, 753 (Ala. 1960) ("assuming without deciding" that an oil, gas, and mineral lease is a conveyance of an interest in real property within the purview of the statute of frauds); *Hanson v. Ware*, 274 S.W.2d 359, 362 (Ark. 1955) (holding royalties are a real property interest); *Kentucky Bank & Trust Co. v. Ashland Oil & Transp. Co.*, 310 S.W.2d 287, 291 (Ky. 1958) (holding right to unaccrued royalties is incorporeal hereditament, real property interest); *Union Oil & Gas Corp. v. Broussard*, 112 So.2d 96, 113-14 (La. 1959) (holding royalty is a "real right" despite the royalty owner's entitlement to payment only "when and if production is obtained"); *In re Shailer's Estate*, 266 P.2d 613, 616 (Okla. 1954) (holding unaccrued royalties are usually treated as real property); *Sheffield v. Hogg*, 80 S.W.2d 741 (Tex. 1935) (holding lessor's royalty interest real property and taxable as such).

[25] *Green v. Biddle*, 21 U.S. 1, 75-76 (1823) (Washington, J.) (Under the common law, "[a] right to land essentially implies a right to the profits accruing from it, since, without the latter, the former can be of no value."); *Freeman v. Stuart*, 24 So. 31, 34 (Ala. 1898) ("Possession and the right to rents, issues, and profits prima facie attend ownership ..."); *see also Cobb v. Hoskins*, 554 S.W.2d 886, 888 (Ky. Ct. App. 1977) (citing *Green v. Biddle*, 21 U.S. 1 (1823)) ("It is fundamental that a right to land implies a right to the profits accruing therefrom.").

[26] *See, e.g., Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 978 (Wyo. 1994); *Covington v. Exxon Co.*, 551 So. 2d 935, 938-39 (Ala. 1989); *see also* Ala. Code § 9-17-33 ("The proceeds derived from the sale of oil or gas production

these principals, the Alabama Legislature has by statute mandated the distribution of production proceeds to royalty and working interest owners. Alabama Code § 9-17-33 requires the "first commercial purchaser" of any oil or gas produced to pay production proceeds "to persons legally entitled thereto" as determined by Alabama real property law.[27] The first purchaser is exempt from such obligation only to the extent that an operator has assumed the responsibility of collecting the production proceeds and paying the same "to persons legally entitled thereto."[28] In this regard, Alabama statutory law provides that any first purchaser or operator that fails to pay the production proceeds to the party entitled thereto "shall be liable to the persons legally entitled to the proceeds from production for the unpaid amount of the proceeds plus interest at the rate of 12 percent per annum, the interest accruing from the date at which the proceeds were due …"[29]

23. "Courts will usually characterize an overriding royalty as an interest in real property for purposes that affect the land involved, and as a personal property interest for purposes of payments that arise from the interest."[30] "The realty/personalty distinction that applies to an override allows the [interest] owner to bring a quiet title action to perfect title to the

---

from any oil or gas well shall be paid to persons legally entitled thereto, commencing no later than six months after the date of the first sale, and thereafter no later than 60 days after the end of the calendar month within which subsequent production is sold.")

[27] Ala. Code § 9-17-33(c) (For such purposes, "[m]arketability of title shall be determined in accordance with the then current legally recognized real property law governing title to oil and gas interest.").

[28] *Id.* ("The first purchaser shall be exempt from this subsection and the operator and/or the owner of the right to drill and to produce under an oil and/or gas lease shall be substituted for the first purchaser therein where the operator and/or the owner and purchaser have entered into an arrangement where the proceeds are paid by the purchaser to the operator and/or the owner who assumes responsibility of paying the proceeds to persons legally entitled thereto.").

[29] Ala. Code § 9-17-33(d).

[30] Akers, *Overriding Royalty Interests: Pitfalls, Precedents and Protection*, 50 ROCKY MT. MIN. L. INST. 21-1 (2004) (citing *Grynberg v. Waltman*, 946 P.2d 473, 476 (Colo. Ct. App. 1996); *Kentucky Bank & Trust Co. v. Ashland Oil & Transp. Co.*, 310 S.W.2d 287 (Ky. 1958); *Ferguson v. Coronado Oil Co.*, 884 P.2d 971 (Wyo. 1994)).

owner's interest in a lease (real property) but to also maintain a conversion action for revenues due as a result of actual production (personal property)."[31]

24. As an owner of a real property right, a royalty owner's rights to identifiable production proceeds attributable to his royalty interest are superior to the rights of an operator or other third parties.[32] Once hydrocarbons are severed from the mineral estate, they become personalty and the operator is obligated to distribute proportionate shares of the production proceeds (cash from the sale of hydrocarbons) to the owners of the underlying interests in the lease.[33] As such, production proceeds attributable to Dominion's ORRI may not be freely disposed of or commingled by the Debtor as if it were property of the estate. Clearly, property of the bankruptcy estate does not include "any power that the debtor may exercise solely for the benefit of an entity other than the debtor" and "equitable interest(s) in such property that the

---

[31] Akers, *Overriding Royalty Interests: Pitfalls, Precedents and Protection*, 50 ROCKY MT. MIN. L. INST. 21-1 (2004) (*citing* Ferguson v. Coronado Oil Co., 884 P.2d 971 (Wyo. 1994)). Alabama courts have also recognized this distinction. In *Dauphin Island Prop. Owners Ass'n v. Callon Institutional Royalty Investors I*, the Alabama Supreme Court held that a royalty interest was a "vested interest" that does not violate the rule against perpetuities. *Dauphin Island Prop. Owners Ass'n v. Callon Institutional Royalty Investors I*, 519 So. 2d 948, 951 (Ala. 1988). In doing so, the Court recognized that it is inappropriate to treat royalties as merely an interest in personal property:

> We do not think it sound to view a royalty interest in minerals as personal property simply because the profits therefrom may be realized only when the minerals are extracted, but we do not find it necessary to hold that royalty interests are real property *for all purposes.*

*Id.* (emphasis added); *see also Covington v. Exxon Co.*, 551 So. 2d 935, 938-39 (Ala. 1989) (discussing operable conversion claim in connection with suspended royalty interest); *Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 978 (Wyo. 1994) (addressing conversion claim in connection with royalty, net profits interest).

[32] *See Thomason*, 403 So.2d at 886 (holding that owner of coal mineral estate was entitled to all coal not actually mined or loosened by an adverse possessor); *Ferguson*, 884 P.2d at 978; *Covington*, 551 So.2d at 938-39; *see also* Ala. Code § 9-17-33 (referring in subsection (a)(2) to royalty and working interest owners as "having an interest in production" and setting forth a statutory deadline in subsection (c) for operators to pay "proceeds derived from the sale of oil or gas" from the date such proceeds are received by the operator).

[33] *Reserve Oil, Inc. v. Dixon*, 711 F.2d 951, 953 (10th Cir. 1983) (holding that working interest holders were entitled to full "ownership" and "control" of proportionate share of the oil and gas and that operator under joint operating agreement could only "invade the owner's province" in compliance to the terms agreed to in the joint operating agreement with respect to distribution of costs); *In re MCZ, Inc.*, 82 B.R. 40, 42 (Bankr. S.D. Tex. 1987) (holding that debtor as operator was simply holding production proceeds as bailee for such funds and has no beneficial interest in such funds). See also, *Ferguson*, 884 P.2d at 978; *Covington*, 551 So. 2d at 938-39; Ala. Code § 9-17-33

debtor does not hold."[34] Under an oil and gas lease, the executive is "bound to account to the non-executive for a fraction of the oil" upon delivery and acceptance of the royalty conveyance.[35]

25. Notably, Alabama Code § 9-17-33 refers to royalty holders as "owners" and requires the "first commercial purchaser" or operator to pay the proceeds derived from the sale of oil or gas "to persons legally entitled thereto" as determined by Alabama real property law.[36]

26. And, as the Supreme Court has explained, a debtor's estate does **not** include property belonging to third parties:

> Property interests in a fund not owned by a bankrupt at the time of adjudication ... are of course not a part of the bankrupt's property and do not vest in the trustee. The Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors. This Court has recently reaffirmed that such property rights existing before bankruptcy in persons other than the bankrupt must be recognized and respected in bankruptcy.[37]

Production proceeds attributable to the ORRI are not property of the estate.[38] Rather, such property belongs to Dominion as the fruits and profits attributable to the ORRI, subject to the

---

[34] *In re SemCrude, L.P.*, 418 B.R. 98, 106 (Bankr. D. Del. 2009) (citing 11 U.S.C. § 541(b)(1), (d)) (holding that Debtor had no interest in production proceeds which were deemed held in resulting trust).

[35] *Dauphin Island Prop. Owners Ass'n*, 519 So. 2d at 949-50 (quoting *Cosgrove v. Young*, 642 P.2d 75, 89 (Kan. 1982) (dissenting opinion); 2 PATRICK H. MARTIN AND BRUCE M. KRAMER, WILLIAMS & MEYERS, OIL & GAS LAW § 324.4 at 60.1 (2014)) ("... the duty may not be onerous for there may never be any oil; but the lack of production does not remove the duty."); *accord C.I.R. v. Gray*, 159 F.2d 834, 840 (5th Cir. 1947) ("Under Louisiana law royalty under a mineral lease is a share of the product reserved by the owner for permitting another to use his property. [When a lessee delivers royalty] he is delivering ... a share of the product, the right to which product was vested in the lessor by virtue of his ownership of the property.").

[36] Ala. Code § 9-17-33(c) (For such purposes, "[m]arketability of title shall be determined in accordance with the then current legally recognized real property law governing title to oil and gas interest.").

[37] *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135-36 (1962) (citations omitted). This principle is fully embraced under the Bankruptcy Code. *See, e.g., First Bank of Linden v. Sloma (In re Sloma)*, 43 F.3d 637, 640 (11th Cir. 1995) (*citing Pearlman*, 371 U.S. at 135 and stating that the trustee in bankruptcy takes only the title of the debtor in property of the estate).

[38] *See In re MCZ, Inc.*, 82 B.R. 40, 41-42 (Bankr. S.D. Tex. 1987) (holding that production proceeds attributable to working interest holders interests were not property of the estate; bankruptcy court, thus, refused to grant Debtor temporary restraining order prohibiting working interest holders from collecting such proceeds); *Dixon*, 711 F.2d at 953 (holding that working interest holders were entitled to full "ownership" and "control" of proportionate share of

Debtor's possessory interest pending the applicable distribution date.[39] The Debtors' "zero balance" cash management system—as described in the Cash Management Motion—sweeps, on a daily basis, all cash in the Debtors' possession.[40] The Cash Management Order expressly approves this cash management system, thereby allowing the Debtor to commingle Dominion's property (production proceeds attributable to the ORRI) with the Debtors' cash.[41] This commingling threatens Dominion's property rights by hindering its ability to trace its production proceeds and defend against competing claims by third parties in the event that the Debtors' fail or refuse to pay Dominion its proportionate share of gas proceeds from the Black Warrior Properties.[42] This commingling also could be used by the Debtors as a mechanism to convert production proceeds that the Debtor is currently holding. Notably, the Debtor has formally stated that it does not intend to distribute, at a minimum, the production proceeds due to be

---

the oil and gas and that operator under joint operating agreement could only "invade the owner's province" in compliance to the terms agreed to in the joint operating agreement with respect to distribution of costs); *see also In re SemCrude, L.P.*, 418 B.R. 98, 106 (Bankr. D. Del. 2009) (citing 11 U.S.C. § 541(b)(1)) (holding that Debtor had no interest in production proceeds which were deemed held in resulting trust).

[39] *See Ferguson*, 884 P.2d at 978; *Covington*, 551 So. 2d at 938-39; *see also* Ala. Code § 9-17-33(c).

[40] Cash Management Motion at 6; *see also supra at* ¶ 12.

[41] Cash Management Order at 2 ¶ 2; *see also* Cash Management Order at 1 n.1 (incorporating by reference certain definitions from the Cash Management Motion).

[42] *See Dauphin Island Prop. Owners*, 519 So. 2d at 951; *Ferguson*, 884 P.2d at 978. It bears noting that at least one bankruptcy court, the Bankruptcy Court for the Southern District of Texas—which regularly confronts the risks associated with commingling of production proceeds in the oil, gas and mineral context—requires every debtor in a complex chapter 11 case to segregate production proceeds attributable to royalty interests. *See* United States Bankruptcy Court for the Southern District of Texas Procedures for Complex Chapter 11 Bankruptcy Cases at Rule 7 ("Cases Involving Debtors Engaged in Drilling, Exploration, Development and/or Operation of Oil, Gas or Mineral Properties"), which provides in relevant part:

> **B. Postpetition treatment of royalty, suspense accounts, and other accounts containing funds attributable to third parties.** All funds received after the petition date that are attributable to an overriding royalty, working interest owner and third party funds shall be maintained by the debtor in a segregated account so designated. ...

distributed on August 14, 2015. If the Debtor fails to do so, Dominion will be charged with tracing the proceeds to the Debtors for the purpose of prosecuting a claim for conversion.[43]

27. For these reasons, Dominion asks this Court to declare that the ORRI is a separate vested interest in real property that is not part of the Debtors' bankruptcy estate, and the production proceeds attributable to the ORRI are not property of the estate.

### B. Count II -- Application for Preliminary Injunction

28. Pursuant to Federal Rule of Bankruptcy Procedure 7065, Dominion asks this Court to enter a preliminary injunction against the Debtor to prevent it from (1) co-mingling the Production Proceeds with other funds of the Debtor; (2) placing any lien or encumbrance on the Production Proceeds and (3) refusing to make distributions in accordance with the Conveyance and Alabama law.

29. As stated above, the Debtor has taken the position that it will not make distributions under the Conveyance. The Debtor has also refused to recognize the fact that the ORRI is a real property interest owned by Dominion and that the proceeds from gas sales are not property of the estate. The Debtor's positions are contrary to state law, bankruptcy law and the terms of the Conveyance. Thus, an injunction is necessary to prevent the Debtors from inflicting immediate and irreparable harm upon Dominion.

30. The Debtor is responsible for collecting the totality of the production proceeds and distributing to Dominion its proportionate share. If the Debtor continues to refuse to pay Dominion its proportionate share of the gas proceeds, the beneficial owners of Dominion will suffer, as they will not receive the property they are entitled to receive under the Trust Agreement and Conveyance. Dominion's beneficial interests are traded on the NYSE under the

---

[43] *See Covington*, 551 So.2d at 938-39.

symbol "DOM". Being listed on the NYSE allows Dominion's beneficial interest holders to freely sell their interests in a public market. But pursuant to the rules of the NYSE, Dominion's beneficial interests could be delisted by the NYSE to the extent that the price of DOM falls below $1.00 and stays below $1.00 over a consecutive 30 trading-day period. Such a delisting would prevent Dominion's beneficial holders from freely-selling their interests on the NYSE.

31. Further, Dominion has virtually no assets outside of the ORRI and the production proceeds distributed on account thereof. Dominion cannot operate for a prolonged period without receiving its scheduled distributions. The terms of Dominion's trust agreement state that Dominion will be required to terminate if the ratio of cash received by Dominion attributable to the ORRI in any quarterly period to administrative costs of Dominion for such quarterly period is less than 1.2 to 1.0 for two consecutive quarterly periods. If Dominion (as a trust) terminates, it will cause irreparable harm to the beneficiaries because the Trustee will be required to sell the Dominion's assets. And, as a direct result of the Debtor's actions, the market value of the ORRI and the beneficial interests in Dominion are materially depressed.

## V. Conclusion

WHEREFORE, Dominion respectfully requests that this Court enter judgment against the Defendant and grant it all relief sought herein along with all other relief that it may be entitled to under law or equity.

Dated: August 11, 2015

Respectfully Submitted,

BENTON & CENTENO, LLP

By: */s/ Lee R. Benton*

Lee R. Benton (Bar No. AS-8421-E63L)
Jamie A. Wilson (Bar No. ASB 8149-E58T)
2019 Third Avenue North
Birmingham, Alabama 35203

518140 000026 15288903.4                    15

Case 15-00102-TOM   Doc 1   Filed 08/11/15   Entered 08/11/15 16:32:54   Desc Main
                            Document      Page 15 of 16

Telephone: (205) 278-8000
Facsimile: (205) 278-3492
Email: lbenton@bcattys.com
jwilson@bcattys.com

-and-

Tye C. Hancock (*Admitted Pro Hac Vice*)
Robert L. Paddock (*Admitted Pro Hac Vice*)
Joseph E. Bain   (*Admitted Pro Hac Vice*)
THOMPSON & KNIGHT LLP
333 Clay Street, Suite 3300
Houston, Texas 77002
Telephone: (713) 654-8111
Facsimile: (713) 654-1871
Email: tye.hancock@tklaw.com
robert.paddock@tklaw.com
joseph.bain@tklaw.com


ATTORNEYS FOR THE DOMINION RESOURCES
BLACK WARRIOR TRUST


## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of August 2015, I electronically filed the **ORIGINAL COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION** with the Clerk of the Court using the CM-ECF system, and served a copy of the above and foregoing, upon the following:

**VIA US MAIL AND CERTIFIED MAIL RETURN RECEIPT REQUESTED:**
Walter Black Warrior Basin, LLC
C/o CT Corporation System, Registered Agent
2 North Jackson St. Ste. 605
Montgomery, Alabama 36104

**Counsel for Debtor:**
Patrick Darby (pdarby@babc.com)
Jay Bender (jbender@babc.com)
Kelly Cornish (kcornish@paulweiss.com)
Claudia R. Tobler (ctobler@paulweiss.com)